IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| WESLEY KNOLTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 16-1269-TMP |
| CAROLYN W. COLVIN, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

_____

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**
_____

Before the Court is plaintiff Wesley Knolton's appeal from a final decision of the Commissioner of Social Security[1] ("Commissioner") denying his application for disability insurance benefits and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 401-434, 1381-1385. (ECF No. 1.) The parties have consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 10.) For the following reasons, the Commissioner's decision is affirmed.

I. **FINDINGS OF FACT**

Knolton applied for disability insurance benefits and SSI on May 24, 2013, with an alleged onset date of November 16, 2012. (R.

_____
[1]Carolyn W. Colvin was the Acting Commissioner of Social Security at the time this action was filed.

47.) The claims were denied initially and upon reconsideration. (R. 95-97; 143-46.) At Knolton's request, an Administrative Law Judge ("ALJ") held a hearing and issued a written decision. (R. 44-57.) In her written decision, the ALJ first found that Knolton had not engaged in substantial gainful activity since the alleged onset date. (R. 49.) Second, the ALJ determined that Knolton had the following severe impairments: degenerative disc disease of the lumbar spine, mood disorder and personality disorder. (R. 49.) Third, the ALJ determined that Knolton did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 50.) The ALJ also determined that Knolton retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can lift and carry 20 pounds occasionally and 10 pounds frequently; he can sit, stand, and walk 6 hours each in an 8 workday; he needs a sit/stand option at will while remaining on task at the work station; he can frequently balance; he can occasionally stoop, kneel, crouch, crawl and climb ramps and stairs, he cannot climb ladders, ropes, or scaffolds; he can understand, remember, and carry out simple and detailed, but not executive functions; he has concentration, persistence, and pace for these activities with normal breaks throughout the day; he can tolerate occasional interaction with the public, co-workers, and supervisors; and he can tolerate occasional changes in the workplace.

(R. 51.) In making this RFC determination, the ALJ considered Knolton's history of degenerative disc disease, which began with a workplace injury in 2010. (R. 52.) Knolton underwent multiple

-2-

surgeries and epidural steroid injections. In January of 2013, Knolton reported only sporadic leg pain with an overall marked improvement, and Lowell Stonecipher, M.D., noted that "everything looks fine." (R. 53.) In March 2013, Dr. Stonecipher advised Knolton to begin an exercise regimen to include minimum walking, and his notes revealed that Knolton continued to improve in this regard in the following months. (R. 52.) Knolton began seeing Frank Jordan at Comprehensive Pain Specialists in January 2014. (R. 52.) Over the next year he visited Dr. Jordan on multiple occasions; by January 2015, Knolton revealed that he was satisfied with the MS Contin prescription because it helped relieve his pain most of the time. (R. 52-53.) All of the records from Comprehensive Pain Specialists note that Knolton has a normal gait and station. (R. 53.) An MRI from September 2014 revealed no disc herniation or canal stenosis. (R. 53.) The ALJ noted that Knolton also had a brief history of mental health treatment at Pathways of Tennessee. (R. 53.) Throughout his treatment there, staff assigned him a global assessment of functioning (GAF) score which indicated only moderate symptoms. (R. 53.) In October 2012, Knolton was prescribed Xanax for anxiety, gabapentin for peripheral neuropathy, and omeprazole for gastrointestinal reflux disease. (R. 53.) Staff noted that Knolton's pain was the root of his emotional issues. (R. 53.)

Regarding opinion evidence, Dr. Jordan stated that Knolton

could not lift greater than 10 pounds, could not frequently bend or sit continuously, and could not walk, stand, or sit for prolonged periods. (R. 53.) The ALJ noted that in his narrative, Dr. Jordan noted that Knolton would be restricted to no greater than 30 pounds. (R. 53.) The ALJ also found Dr. Jordan's statement "inconsistent with the general efficacy of [Knolton]'s medication regimen, pain clinic treatment notes, and with the record as a whole," and accordingly assigned it little weight. (R. 53.) Carol Newman, FNP, of the Tucker Clinic of Bemis, stated that Knolton's medication for chronic pain and anxiety would cause significant sedation which would make work difficult and possibly dangerous. (R. 53.) The ALJ noted that Knolton testified that he had no side effects as a result of these medications. (R. 53.) The ALJ also found that Ms. Newman "is not an acceptable medical source as defined in SSR 063-p" and therefore assigned her opinion no weight. (R. 53.) Dr. Stonecipher opined that Knolton could not perform his former job, but could work in a light position with lifting 20 pounds occasionally and 10 pounds frequently; the ALJ determined this was consistent with the record and accordingly afforded it great weight. (R. 53.) Steve Weaver, M.D., examined Knolton in connection with the claim and noted that Knolton's strength was 5/5 in all major muscle groups, except his legs which were 4/5. (R. 53.) Knolton exhibited decreased ranges of motion in the lumbar spine but got into and off the examination chair without

difficulty.  Dr. Weaver opined that Knolton could never lift or carry any weight, and could occasionally sit and reach but could never stand, walk, stoop, kneel, or climb stairs.  (R. 53-54.)  The ALJ determined that this opinion was not consistent with the examination and afforded it little weight.  (R. 54.)  Charles Settle, M.D., and Thomas Thrush, M.D., Disability Determination Service ("DDS") physicians, reviewed the record and opined that Knolton could lift and carry 20 pounds occasionally and 10 pounds frequently, and could sit, stand and walk 6 hours in an 8 hour workday with normal breaks.  The ALJ found these opinions consistent with the record and gave them great weight.  (R. 54.) Dennis Wilson, Ph.D., a psychological consultant, examined Knolton and administered a mental status examination and clinical interview.  (R. 54.)  Dr. Wilson diagnosed mood and personality disorder, but indicated only moderate symptoms and opined that Knolton was mildly impaired in his ability to understand and remember, moderately impaired in the ability to sustain concentration, persistence, and pace; moderately to markedly limited in his ability to interact with others; and moderately limited in his ability to adapt to changes and requirements.  (R. 54.)  The ALJ found that Dr. Wilson's opinion was "not expressed in appropriate functional terms" and thus assigned it little weight in her RFC determination.  (R. 54.)  In light of the above, the ALJ found that Knolton's "allegations and contentions regarding the

nature and severity of the impairment-related symptoms and functional limitations" to be partially credible, and found that while "the allegations of back pain, depression, and personality disorder" were supported by the record, the "contentions regarding the severity thereof and related functional restrictions" were not. (R. 54-55.)

Fourth, the ALJ determined that Knolton could not perform any past relevant work. (R. 55.) Finally, the ALJ determined that, considering Knolton's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which he could perform. (R. 55-56.) In making this determination, the ALJ utilized a vocational expert ("VE"), who opined that, given the RFC finding, Knolton would be able to perform unskilled occupations with a light exertional requirement such as an assembler, collator operator, and marker. (R. 56.) Thus, the ALJ found that Knolton was not disabled. (R. 56.) The Social Security Administration's ("SSA") Appeals Council denied Knolton's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 33.)

Knolton filed the instant action on October 14, 2016. (ECF No. 1.) Knolton first argues that the record, findings and opinions of Dr. Jordan and Dr. Weaver, and his own testimony establish that he is disabled. (ECF No. 14 at 12.) Next, Knolton argues that the ALJ erred by assigning controlling weight to the

form statements provided by DDS examiners while failing to properly credit Knolton's examining physicians. (Id. at 13.) Third, Knolton argues the ALJ's RFC determination was erroneous because she did not adhere to SSR 96-8p. (Id. at 16.) Fourth, Knolton argues that the need to speculate as to the meaning of a "marked" limitation in the context of Knolton's ability to interact with others requires remand. (Id. at 18.) Based on these arguments, Knolton asserts that the ALJ's decision was not supported by substantial evidence and accordingly must be remanded. (Id. at 19.)

## II. CONCLUSIONS OF LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 320 (6th Cir. 2015); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v.

Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997);

Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Kiner v. Colvin, No. 12-2254-JDT, 2015 WL 1295675, at *1 (W.D. Tenn. Mar. 23, 2015).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v.

-9-

Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered.

Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C.   Whether the ALJ's Credibility and Opinion Determinations Were Supported by Substantial Evidence**

First, Knolton argues that his own testimony, along with the medical evidence submitted, establishes that he is disabled. (ECF No. 14 at 12.) The ALJ determined that Knolton's "allegations and contentions regarding the nature and severity of the impairment-related symptoms and functional limitations" were partially credible, but found that while "the allegations of back pain, depression, and personality disorder" were supported by the record, the "contentions regarding the severity thereof and related functional restrictions" were not. The Sixth Circuit has "'held that an administrative law judge's credibility findings are virtually unchallengeable' absent compelling reasons." Shepard v. Comm'r of Soc. Sec., No. 17-1237, 2017 WL 4251707, at *4 (6th Cir. Sept. 26, 2017) (quoting Ritchie v. Comm'r of Soc. Sec., 540 F. App'x 508, 511 (6th Cir. 2013)). Those compelling reasons appear when ALJs' credibility determinations are not "supported by

substantial evidence." Rogers, 486 F.3d at 249. When making a credibility determination, ALJs "must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). In the event that "an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record . . . ." Id. Beyond objective medical evidence, the SSA has identified several specific considerations for ALJs. These include the claimant's daily activities; the location, duration, frequency and intensity of the symptoms; aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication that the claimant receives; and any other information relevant to these symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Here, the ALJ appropriately evaluated Knolton's testimony, and provided good reasons for her credibility determination. Specifically, the ALJ identified several instances in the record where Knolton explained that his pain and symptoms were improving due to treatment and medication. Furthermore, the ALJ discussed the medical evidence in the record and noted discrepancies between Knolton's testimony and the objective medical evidence.

Knolton also argues that Dr. Weaver and Dr. Jordan opined that Knolton could perform less than sedentary work and that these

opinions were entitled to controlling weight as a matter of law. (ECF No. 14 at 12-13.) The ultimate decision of whether Knolton is disabled is reserved for the Commissioner. Walker v. Sec. of Health and Human Servs., 980 F.2d 1066, 1070 (6th Cir. 1992). An opinion on a matter reserved to the Commissioner, such as whether a plaintiff is disabled, is not entitled to "any particular weight," even where the opinion is from a treating physician. Johnson v. Comm'r of Soc. Sec., 535 F. App'x 498, 505 (6th Cir. 2013). Thus, the ALJ was not required to assign any particular weight to this portion Dr. Weaver or Dr. Jordan's opinion. See 20 C.F.R. § 404.1527(d); Turk v. Comm'r Soc. Sec., 647 F. App'x 638, 640 (6th Cir. 2016). Knolton also points out that the ALJ did not include Dr. Stonecipher's complete opinion statement from June 2013, which noted that Knolton "probably needs to sign up for his disability." (R. 503.) This argument likewise fails to account for the entirety of Dr. Stonecipher's statement: he also noted that Knolton "only needs a light classification of 20 pounds occasionally and 10 pounds frequently," and that he agreed with the functional capacity evaluation that Knolton had recently undergone. (R. 503.) The record therefore does not support Knolton's contention that Dr. Stonecipher asserted that he was disabled and, even if it did, the ALJ would not be required to credit such an opinion where it intrudes on the ALJ's ultimate decision. See Johnson, 535 F. App'x at 505; Walker, 980 F.2d at 1070. The ALJ's decision in this

regard was therefore supported by substantial evidence, and accordingly must be affirmed.

**D. Whether the ALJ's Assessment of the Medical Evidence Was Supported by Substantial Evidence**

Next, Knolton argues that the ALJ failed to comply with the Social Security regulations in evaluating the examining and treating physicians' opinions. (ECF No. 14 at 13.) Treating sources are accepted medical sources who have or have had an "ongoing treatment relationship" with a claimant. 20 C.F.R. § 416.927(a)(2). ALJs assess a treating source's opinion to determine if it is consistent with the medical records and is well-supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.927(c)(2). If it is, the ALJ will give the opinion controlling weight; if it is not, the ALJ will apply a set of regulatory factors to the opinion to determine what weight to give it. Id. ALJs should "always give good reasons" in their decisions for the weight that they give the opinion of a treating source. Id. However, in certain instances, such as when the "Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion[,]" it amounts to a harmless error for an ALJ to fail to comply with these regulatory requirements. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 546–47 (6th Cir. 2004). In addition, "a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." Morr v. Comm'r

of Soc. Sec., 616 F. App'x 210, 211 (6th Cir. 2015) (citing Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993)); see also Keeler v. Comm'r of Soc. Sec., 511 F. App'x 472, 473 (6th Cir. 2013).

Here, substantial evidence supported the ALJ's assessment of Dr. Stonecipher and Dr. Jordan's opinions concerning Knolton's physical limitations. The ALJ gave great weight to Dr. Stonecipher's opinion that Knolton could perform "light" work, lift 20 pounds occasionally and 10 pounds frequently. This opinion was from the relevant time period, after Knolton alleged his disability began. Also, while Knolton alleges that the opinion only addresses the ability to lift and carry, Dr. Stonecipher's opinion speaks to the ability to perform "light" work generally. Accordingly, the ALJ was entitled to assign it the weight that she did. Because the ALJ's determination as to Dr. Stonecipher's opinion was supported by substantial evidence, the ALJ was also entitled to weigh it against the opinion of Dr. Jordan. Dr. Jordan opined in 2015 that Knolton could not lift more than 10 pounds and could perform "no excessive or frequent bending, no continuous sitting without opportunities to change positions as required for pain alleviation, and no prolonged standing, walking, or sitting." But it is the ALJ's responsibility to resolve conflicts in the record and, where that decision is supported by substantial evidence, it cannot be overturned. See Justice v. Comm'r of Soc. Sec., 515 F. App'x 583, 588 (6th Cir. 2013). Furthermore, the ALJ explained that Dr.

Jordan's suggested limitations were inconsistent with his own treatment notes. (R. 53.) Such discussion is sufficient to provide "good reasons" for assigning the opinion the weight that she did. See Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 651 (6th Cir. 2009); Bledsoe v. Barnhart, 165 F. App'x 408, 412 (6th Cir. 2006).

Similarly, the ALJ explained that Dr. Weaver's opinion that Knolton could "never to rarely" lift even 10 pounds and could stand or walk "never to a very limited distance" was unsupported by his own examination record. Dr. Weaver examined Knolton only once, thus his opinion was not entitled to controlling weight and the ALJ did not need to discuss his findings in detail. See Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012). Nonetheless, the ALJ noted Dr. Weaver's findings that Knolton's arms had full and normal strength and nearly normal leg strength, and he could get on and off the examination table without difficulty. Thus, the ALJ discussed other evidence in the record that contradicted Dr. Weaver's conclusions, and such discussion was sufficient to establish "good reasons" under the regulations.

**E. Whether the ALJ's RFC Determination was Supported by Substantial Evidence**

Knolton next argues that the ALJ's RFC determination was flawed because she improperly dismissed the opinions of Dr. Jordan and Dr. Weaver, the testimony of Knolton, and the statement from Dr. Stonecipher. (ECF No. 14 at 16.) As explained above, the

ALJ's assessment of each of these factors was supported by substantial evidence. Knolton further argues that, when "the proper" – that is, based on the treating physicians and DDS examiners' opinions – "RFC was proffered as a hypothetical, the VE opined disability." (ECF No. 14 at 16-17.) Again, the ultimate decision as to disability is reserved for the ALJ. Accordingly, Knolton's arguments on this point are unpersuasive, and the ALJ's RFC determination will be affirmed.

**F. Whether the ALJ Properly Evaluated Knolton's Social Limitations**

Knolton finally asserts that the ALJ erred by failing to contact Dr. Wilson for clarification regarding his psychological evaluation. (ECF No. 14 at 18.) Dr. Wilson's report specifically concluded, in part, that Knolton was "[m]oderately to markedly" limited in his ability to interact with others. (R. 536.) The ALJ gave "little weight" to this conclusion because it was "not expressed in appropriate functional terms." (R. 54.) Knolton argues that there was some confusion at the hearing regarding the meaning of "markedly" in the functional context, and that the ALJ should have called Dr. Wilson to clarify or ask for guidance in the translation rather than speculate as to its meaning. (ECF No. 14 at 18-19.) However, the ALJ was not required to contact Dr. Wilson for clarification, and substantial evidence otherwise supports the ALJ's evaluation of Knolton's social limitations.

Specifically, the ALJ assessed Knolton's general level of limitation under the "special technique" at step three, and explained why that he found Knolton had only a "moderate" limitation in this area due to his ability to function normally in day-to-day activities. See 20 C.F.R. §§ 404.1520a(c)(3), (d)(1); 416.920a(c)(3), (d)(1); 20 C.F.R. pt. 404, subpt. P, app. 1, §12.00C. While this finding is not to be directly used in formulating the RFC, see SSR 96-8p, 1996 WL 374184, at *4, the ALJ must still consider "all of the relevant evidence in the case record," including reports of daily activities. Id. at *5. The ALJ's findings regarding Knolton's daily activities are therefore relevant to the RFC determination. Furthermore, Dr. Wilson was not a treating physician, and the ALJ was not required to contact him for clarification. See SSR 96-5p, 1996 WL 374183, at *2.

Even if Dr. Wilson were a treating physician, the record contained sufficient evidence to render a decision as to Knolton's social limitations without seeking clarification. See Ferguson v. Comm'r of Soc. Sec., 628 F.3d 269, 274 (6th Cir. 2010); Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 156 n.3 (6th Cir. 2009). Specifically, the ALJ relied on two other DDS mental health professionals in formulating Knolton's RFC in this regard. (R. 54.) Both opined that Knolton could interact with peers and supervisors on at least an infrequent basis. The ALJ credited these findings in her RFC determination, which limits Knolton to

"occasional interaction with the public, co-workers, and supervisors[.]" (R. 51.) The evidence in the record was therefore sufficient to assess Knolton's social limitations without seeking further evidence and, in making the determination, the ALJ considered all the evidence in the case record, as required. <u>See</u> SSR 96-5p, 1996 WL 374183, at *3. Because substantial evidence supports the ALJ's determination, it will be affirmed.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

s/ Tu M. Pham<br>
TU M. PHAM<br>
United States Magistrate Judge

June 19, 2018<br>
Date